| | |
|---|---|
| PERMELIA COLES, BY HER NEXT FRIEND, BENJ. G. BUCK vs. WILLIAM COLES. | MARCH TERM, 1851. |

[ALIMONY, PENDENTE LITE—DIVORCE.]

THE rule is believed to be almost universal, to allow a destitute wife, who has been abandoned, or is living apart from her husband, temporary alimony, and the means of prosecuting or defending a suit for divorce, and this without any inquiry, whatever, into the merits of the case.

30*

Though its jurisdiction has been denied by demurrer, or otherwise, the court is not, on that account, at liberty to withhold from the wife the means of living in the interval, or perhaps of prosecuting her suit.

But if the wife has under her own control, the means of carrying on the suit and maintaining herself pending the litigation, the reason of the rule fails, and the rule itself fails also.

Where the application for temporary alimony and the means to prosecute the suit, was delayed until the cause was nearly ready for final hearing, upon the merits, and it being proved that the wife had received since the commencement of the suit, the sum of $300, in derogation of the marital rights of the husband, which·he consented she should retain and apply to the expenses of the suit, the court refused to order the husband to pay any thing .further to enable his wife to prosecute her suit, but passed an order granting her alimony, *pendente lite.*

To support the charge of "cruelty of treatment" under the 3d section of the act of 1841, ch. 262, it is not sufficient to show acts of mere petulance and rudeness, and sallies of passion, but there must be a series of acts of personal violence, or danger of life, limb, or health, to justify the court in separating the parties.

The rule prescribed by the common law, and the law of England, is applicable to this statute, and the term *"cruelty"* used in it, must have the same interpretation as that given by the ecclesiastical courts.

The marriage relation is not to be dissolved upon slight grounds, nor will parties be relieved from the duties and responsibilities it imposes, merely because there may be some want of congeniality in their tempers and dispositions.

Public policy and morality alike condemn these partial dissolutions of the matrimonial union, and to justify the court in decreeing them, reasons of a grave and weighty nature should exist ; and in this state, the causes which should lead to such separation, ought to be the more urgent and imperative, from the fact, that our statute, unlike that of other states, compels the court, if it interferes at all, to separate the parties permanently, and not for a limited time.

[The petition for a divorce in this case, was filed in the equity side of Baltimore County Court, on the 1st of February, 1850, and states that the petitioner was married to the defendant on the 29th of November, 1849, and lived with him as his wife until the 28th of January, 1850, sedulously fulfilling her duties as such. That within a fortnight after their intermarriage, her husband began ill treatment of her, by the most abusive language, and has continued such treatment, indulging in the most intemperate, unprovoked and terrifying outbreaks of passion, that recently, when the petitioner has been sick and

suffering, his treatment has become more abusive, unkind and cruel. That he uttered threats as to his treatment towards her in future, so as in fact to render her incessantly fearful of some serious bodily maltreatment. That she, thus apprehensive, left his house on the night of the 28th of January, 1850, and cannot, as she believes, return thither with safety. In consideration of the brutal treatment of her said husband she prays for a divorce, *a vinculo matrimonii.*

The answer of the defendant was filed on the 30th of March, 1850, and after admitting the marriage, denies, explicitly, every charge in the petition of ill treatment, and avers that respondent in his whole deportment to his wife was a kind and indulgent husband, and that her whole complaint is without foundation. That he is advised that the plaintiff's case, as made in her bill, will not entitle her to the relief prayed, and he urges this as a distinct defence to said bill, and relies upon the same as a cause of dismissal of the said complaint.

On the 24th of April, 1850, the petitioner filed an amended and supplemental petition, in which, in addition to the matters stated in her original petition, she specifies other acts of cruel treatment, and charges that her said husband, during their marriage and her cohabitation with him as his wife, had, and continued to have, illicit and adulterous intercourse with a certain woman whom he had seduced before his marriage and also with other lewd women. On the second of May, 1850, the defendant filed his answer to this amended bill, and after reiterating his denial of cruelty of treatment, particularly denies that during the time his said wife cohabited with him, he has had illicit or adulterous intercourse with the woman referred to, or any other woman.

On the 8th of April, 1850, a commission to take testimony was issued, which, after several applications on the part of the defendant, was returned and filed on the 30th of December, 1850, containing a mass of testimony, the purport of which is sufficiently stated in the opinions of the Chancellor. On the 28th of December, 1850, the cause was removed to this court, upon suggestions filed by the petitioner, who, afterwards, on the 4th

of January, 1851, filed her petition for alimony, *pendente lite*, and for an allowance of money to prosecute the suit, in which she states, that on the 5th of September, 1850, she gave birth to a male infant, the issue of her said marriage, which is yet alive and nurtured by her. That she has lived apart from her said husband for more that eleven months, during a part of which time she was seriously ill, and throughout the whole period has been, and is, in delicate health, that she has been unable to do any thing towards her own support, or that of her infant, since its birth. That during all said period of separation from her husband, she has remained in the home, and under the protection, and at, the charge of her mother, whose circumstances are limited, requiring her daily exertions for her own livelihood, and that of her younger children. That the expenses of petitioner during her sickness, and for the care and nurture of her said infant are heavy, and have been so, and that she is unable to defray the same, and the expense of conducting, by counsel, her suit for divorce. That her husband is extensively engaged in a lucrative business, which yields him at least $1200 per annum. She, therefore, prays that an order may be passed granting her proper alimony, *pendente lite*, and the means wherewith to defray the costs and fees for the prosecution of her said suit.

On the 6th of January, 1851, the Chancellor passed an order, setting the matter of this petition down for hearing on the 6th of February, then next. Afterwards; on the 20th of January, an order was passed, granting leave to either party to take depositions, to be read at the hearing of this petition, under which testimony was taken, the purport of which is stated in the opinion.

On the 13th of February, 1851, the defendant filed his answer to this petition, in which he states, that his wife's patrimony was $300, which was invested in the hands of her brothers, none of which has he ever touched, and that she still has it in her possession, or is yet to receive it, and if it can be so done, respondent would wish it may be invested for her separate use, at least so much of it as may remain, after paying the costs on his

wife's part of conducting her present suit for divorce, alimony and other relief, and hereby gives his consent to her using said money for any purpose she sees fit. He insists that the fact that the expenses of her sickness, and the care and nurture of her infant are heavy, and that she is unable to defray the same, does not furnish her with a right to the interference of the court, because, without cause of grievance or quarrel of any kind on the part of his wife, she deserted her husband and left the home, which he had provided for her, and which is still open to her, and has refused to live with and under the protection of her husband, and at his house, where every comfort and luxury would have been found and provided for her. He states, that since August last he has been pressing and anxious that the suit should be brought to a termination; that it might have been tried long ere this but for the interposition of the complainant. That time and again respondent has invoked the aid of the court, as the record will show, to have the commission returned, in order to set the cause down for hearing; that he is ready to try it at any time, and now offers to submit it without argument on the day fixed for taking up the petition for alimony, &c. That the anguish of mind into which respondent has been thrown by the cruel conduct of his wife and her family has prevented his making any exertions in his business, and instead of making near $1200 *per annum*, he has lost more than that sum during the year 1850, and that he now requires, at the hands of his creditors to whom he is indebted, an indulgence or extension of time for the amounts due to them. In view of these facts, he submits whether, under the circumstances, alimony, *pendente lite*, ought to be granted. Upon the hearing of this petition the following opinion was delivered:]

THE CHANCELLOR:

This case comes before the court upon the petition of the complainant filed on the 4th of January last, praying for alimony, *pendente lite*, and for means to defray the cost and expenses of the suit. The cause originated in a bill filed by the petitioner on the equity side of Baltimore County Court, on the

1st of February, 1850, asking for a divorce, *a vinculo matri-monii*, upon the grounds in said bill set forth. It may turn out that the grounds upon which the interposition of the court is asked in the original bill, are not sufficient, even if established by the clearest proof, to entitle the party to a decree dissolving the marriage, though, in that event, a qualified divorce may be granted, if the causes proved be sufficient to entitle the complainant to that relief, as provided by the 3d section of the act of 1841, ch. 262. After the defendant had answered this bill, which he did in March, 1850, the complainant filed an amended and supplemental bill, charging the defendant with adultery, and repeating the complaint of cruel usage towards herself. This last bill was filed on the 24th of April, 1850, and on the 10th of the following month, the defendant put in his answer denying the charge of cruelty, and adultery, as alleged against him. A commission then issued, under which numerous depositions were taken, and the cause being about to be brought to a hearing in Baltimore County Court, upon the suggestion of the complainant, filed on the 28th of December last, it was transferred to this court, where, according to the rule, it will stand for hearing at the ensuing March term. It was in this posture of the case that the present petition was filed on the 4th day of the past month, and I cannot help feeling, in some degree, the influence of the observations of the defendant's counsel, founded upon the circumstances which have been narrated. It is certainly somewhat remarkable, that a petition for immediate alimony and for money to carry on the suit, should have been withheld until the suit is nearly ready to be heard upon the merits, when a final disposition may be made of the whole matter.

The general rule is clear and undisputed, that the wife, in these cases, is a privileged suitor, and that the court, without inquiring into the merits, and whether she be plaintiff or defendant, will allow her alimony, *pendente lite*, and a sum for carrying on the suit. The rule is believed to be almost universal, to allow a destitute wife, who has been abandoned, or is living apart from her husband, temporary alimony, and the

means of prosecuting or defending a suit for divorce, and this without any inquiry whatever, into the merits. Many of the cases establishing the rule, and explanatory of the reasons upon which it rests, were referred to in *Daiger* vs. *Daiger*, recently decided by this court. In *Mix* vs. *Mix*, 1 *Johns. Ch. Rep.*, 108, Chancellor Kent says, "after the fact of marriage is admitted, the courts do allow the wife a sum for carrying on the suit, as well as for intermediate alimony." This remark was made in a case, however, in which the petition "stated a case requiring immediate relief." And in the subsequent case of *Denton* vs. *Denton, same book, page* 364, the existence of the rule is distinctly reaffirmed and enforced, and the authority of these cases is recognized by the Court of Appeals in this state, in the case of *Ricketts* vs. *Ricketts*, 4 *Gill*, 105.

But if the wife has under her own control the means of carrying on the suit, and maintaining herself, pending the litigation, the reason of the rule fails, and the rule itself fails also. This qualification of the rule has not been controverted, the argument of the counsel, for the petitioner, having been denied to show that she is without the means, either of supporting herself, or defraying the expenses of the suit, and this is the material question to be considered upon the present application.

It has been already observed, that upon this application, the merits of the prayer for a divorce, will not be examined. The question, now before the court, will be decided irrespective of the merits, and even though its jurisdiction has been denied in the argument, it is not, on that account, at liberty to withhold from the petitioner the means of living in the interval, or perhaps, of prosecuting her suit. In the case of *Mix* vs. *Mix*, already referred to, where the defendant, the husband, demurred to the bill for the want of jurisdiction, the Chancellor, before the demurrer was disposed of, and of course, before the question of jurisdiction was settled, ordered temporary alimony, though he did not, in that condition of the case, feel at liberty to allow the wife money to carry on the suit. He remarked that "the plaintiff ought to set down her cause for hearing, upon the demurrer." In this case, the defendant has not demurred,

but has answered, and thus evinced a disposition to try the cause upon the merits, and therefore it might be proper, if the circumstances in other respects showed the propriety of it, not only to allow alimony, *pendente lite,* but to furnish the wife with the means, out of the pocket of the husband, of conducting her suit.

But, it is said here that the wife has the means, not only of supporting herself whilst the cause is progressing, but also of paying the expense of it, and in this connection, reliance is placed by the counsel for the husband, and as it appears to me, with some degree of reason, upon the circumstance of the disposition manifested by him, to bring the cause to a conclusion.

It may be that the reasons urged on the part of the petitioner, excusing the delay on her part, in preparing the cause for trial, are worthy of consideration, but still they do not satisfactorily account for her delay in filing this petition, or repel the inference thence deducible, that she was not entirely destitute of funds for carrying on the suit, nor do they, by any means, deprive the defendant of the favorable consideration to which his alacrity in pressing the cause on, may be supposed to entitle him. He certainly has shown no disposition to protract the suit, and harass the complainant with costs, or wear out her patience with delay, and, therefore, the court would not feel inclined to press him with any very harsh measure of justice. If the petitioner has the means of carrying on the suit, the rule does not require that the burden should be shifted from her to the defendant, and upon an examination of the record, I am of opinion that she does possess those means.

It would be an useless consumption of time to state, in detail, the grounds of this conclusion, but I am persuaded that the $300 which she received in March, 1850, and which her husband says she may apply in this way, will at least, for the present, be adequate for this purpose. If her husband had received this money, as in virtue of his marital rights he might, supposing his engagement to invest it for her separate use not binding upon him at law, it could hardly be maintained that he would have been compelled to supply a larger amount to ena-

ble her to carry on the suit, and, therefore, as she already has it in her possession, I do not see the propriety of calling upon him for an additional sum.

She has now in her hands, or at all events, received in March, 1850, three hundred dollars, which by the marriage, devolved upon the husband, and which he expresses his willingness she may employ in conducting this suit. It appears to me, that if the husband had collected this money, as, at law, he unquestionably was entitled to do, the court would not have required him to pay more than that sum to enable her to defray the expenses of this cause, and as he forebore to do this, and suffered her to receive and retain it, it would appear to be entirely proper not to coerce him further at this time. The cause, if an opinion may be formed from the stage it has now reached, will be brought to a conclusion upon its merits, in a short time, but, if it should not, and a proper case should be presented hereafter, it will be in the power of the court to make such future order with respect to costs, as the exigencies of the case may require. Nothing more is now intended to be decided, than that in the present condition of this controversy, and giving due weight to the time when the application for alimony, *pendente lite*, and for money to carry on the suit, is made, and to the probabilities of a speedy and inexpensive litigation from this period to the end of the suit, there does not appear to be any necessity for compelling the husband to make advances for that purpose.

The case of *Daiger* vs. *Daiger*, has been referred to by the counsel for the petitioner, as an authority in support of both branches of the present application. But it will be found upon examining the opinion in that case, that the order was passed upon the presumption that the wife had no means of living, or of defraying the expenses of the suit, such being the legal presumption in the absence of proof to the contrary. There was, to be sure, some evidence in that case, that when she left her husband's home, she removed several articles of furniture, but there was nothing to show that she had any pecuniary means of prosecuting the suit, and it appeared that she was entirely de-

pendent upon her own unaided exertions for her support. The circumstances of this case are materially different. Here the wife is shown to have received three hundred dollars in derogation of the marital rights of the husband, which he consents she shall retain, and apply to the expenses of the suit. And it is, moreover, shown that she is living with her mother, and is, therefore, not thrown entirely upon her own exertions for support. That case and this differs also in the time when the application for alimony and means to carry on the suit, is made. Here, the cause has been prosecuted almost to a final hearing—there, the controversy had but just commenced, and there was every prospect of a long and expensive litigation.

Under all the circumstances, I am of opinion that I ought not, at this time, to go so far as to order the husband to pay any thing to enable his wife to carry on the suit, and consequently, that part of the prayer of this petition must be rejected. The application for alimony, *pendente lite*, stands upon different grounds. I am not satisfied that this petitioner has the means of supporting, with comfort, herself and her child, even with such assistance as she may receive from her mother, and, therefore, not looking at all to the merits, I shall pass an order making some allowance for that purpose. In answer to that part of the petition which technically is called the allegation of faculties, the defendant has spoken of his embarrassed circumstances, and I do not feel myself at liberty to overlook his answer in this respect, in fixing the amount of the allowance.

It is therefore ordered, this 17th day of February, in the year 1851, that the defendant pay to the plaintiff the sum of one hundred and fifty dollars a year, in quarterly payments, to be computed from the first day of January last, and that this allowance is to continue until further order, and to be subject to variation, as future circumstances may require : and it is further ordered, that so much of said petition as prays for means wherewith to defray the expense of prosecuting the suit, be disallowed, with a reservation of power in the court to pass such other order in this respect, as the exigencies of the case may hereafter require.

[Upon the final hearing of the cause which took place on the 29th of April, 1851, without any further testimony or proceedings, by either party, the following opinion was delivered:]

THE CHANCELLOR:

This case standing ready for hearing, and being submitted on the part of the defendant's, and the complainant's counsel having presented an argument, in writing, in support of the prayer of the bill, the proceedings have been read and considered by the court.

There appears to me no ground, whatever, for a divorce *a vinculo matrimonii*, the charge of adultery made in the bill being wholly unsupported by the proof, and the only question is, whether the complainant is entitled to a divorce *a mensa et thoro*, for "cruelty of treatment," under the 3d section of the Act of 1841, ch. 262. The observations of Mr. Chancellor Kent upon this subject, in the case of *Barrere* vs. *Barrere*, 4 *Johns. Ch. Rep.*, 189, are pregnant with instruction, and show, I think, most satisfactorily, that the acts relied on in this case, in support of the charge of "cruelty of treatment," are wholly insufficient for the purpose. "Mere petulance and rudeness, and sallies of passion, may not be sufficient." There must, says the Chancellor, "be a series of acts of personal violence, or danger of life, limb or health," to justify the court in separating the parties. These remarks were made with reference to the New York statute, which uses language substantially the same as ours. They show that the rule prescribed by the canon law, and the law of England, was deemed applicable to the New York statute, and that the term "cruelty," used in the statute was to have the same interpretation as was given it in the ecclesiastical courts.

Now, tested by this standard, and there is in the evidence in this case nothing to justify the court in decreeing the separation of these parties. There may have been some acts which seemed harsh in the eyes of a fond mother and sister, but surely nothing which amounts to "cruelty," as that word is understood in the law. The marriage relation is not to be dissolved upon slight grounds, nor will parties be relieved from the du-

ties and responsibilities it imposes, merely because there may be some want of congeniality in their tempers and dispositions. Public policy and morality alike condemn these partial dissolutions of the matrimonial union. It is, says an eminent judge, throwing the parties back upon society, "in the undefined and dangerous characters of a wife without a husband, and a husband without a wife," and to justify the court in doing so, reasons of a grave and weighty nature should exist. I do not think the present case is marked by those features, which, looking to the policy by which courts are governed upon a subject of so much delicacy, should induce me to decree a separation. Our statute, unlike that of New York, would compel me, if I interfere at all, to separate these parties permanently, and not for a limited time. There, the decree may be for a limited period, or forever, as under the circumstances may seem just and reasonable. With us, as the decree must place a perpetual barrier between the husband and wife, the causes which should lead to it ought to be more urgent and imperative, than if by a temporary separation, opportunity would be given for reconciliation, a consideration, says Chancellor Kent, of more weight "if the unhappy parties have a common offspring, to be effected by their infirmities." And in this case, it appears, such offspring does exist, whose life may be embittered by the unhappy dissensions of the parents.

It is, thereupon, and for these reasons, this 29th day of April, 1851, by John Johnson, Chancellor, and by the authority of this court, adjudged, ordered and decreed, that the bill of complaint, filed in this case, be and the same is hereby dismissed, but without costs.

WM. J. WARD, for Petitioner.
JOHN H. ING, for Defendant.