AMELIA M. TAYMAN
vs.  •
LEVI L. TAYMAN.

} March Term, 1851.

[DIVORCE A MENSA ET THORO—ALIMONY, PENDENTE LITE.]

There can be no doubt of the power of this court, pending a bill for a divorce by a wife, to compel the husband to pay her temporary alimony, and also to furnish her with the means of defraying the expenses of the suit; and that upon such an application by the wife, living apart from her husband, and without means, the merits will not be looked into, the allowance being made almost, if not entirely, as a matter of course.

If the wife be living with her husband, an allowance of alimony, *pendente lite*, would be unnecessary and improper, but it does not follow, that under such circumstances, upon an application by her, the husband would not be made to supply her with money, to fee counsel and defray the expense of the suit.

The application must be made by the wife, and not by the counsel in his own name.

The terms "cruelty of treatment," in the 3d section of the act of 1841, ch. 262, are to be construed as having the same meaning as that attributed to them by the ecclesiastical courts in England, and which has been given to equivalent language in the New York statute.

Upon granting a divorce *a mensa et thoro*, the act of 1841, ch. 262, requires the property of the wife which she had at the time of her marriage, or such portions thereof as remain undisposed of, to be delivered up to her.

[The bill in this case was filed on the 9th of September, 1850, by Amelia M. Tayman of Anne Arundel County, against her husband, Levi S. Tayman, for a divorce. It alleges her marriage with the defendant some time in the year 1849, and that since that time she has resided with, and demeaned herself towards him as a chaste, loving and obedient wife. That shortly after her marriage, the habits of her husband become greatly changed, and particularly his behavior towards your oratrix. Instead of the sober and affectionate person she supposed him to be at the time of her marriage, he became excessively dissipated, and began to treat your oratrix in a most cruel and forbidden manner. That, notwithstanding, she bore his treatment with meek and quiet submission, hoping thereby, and by a constant devotion to his welfare, to reclaim him from his vicious

habits, yet, he became more abandoned, and at this time is utterly given up to drunkenness, whilst his treatment of your oratrix is barbarous in the extreme. As an instance of the cruelty and danger to which she is constantly exposed, she states, that some time in the month of August, her husband assaulted her, and though feeble and unresisting, he beat and bruised her person in a most degrading manner, and but for the officers of the law, who arrested and confined him, she feared her life would have been taken. That on giving security to keep the peace, he was discharged, but has forfeited his recognizance by renewing his assaults upon your oratrix, attacking her with fire arms and other instruments of death, and forcing her, with her helpless and afflicted child, to seek refuge from his brutal violence in the houses of her neighbors. The bill, also, charges adultery on the part of the husband, and prays for a divorce *a vinculo*, or, if that should not be adjudged the proper remedy, a divorce *a mensa et thoro*. The bill further states, that at the time of her marriage, complainant was living upon the land which had been assigned her, as dower, from the real estate of her first husband, the late Dennis Boyd, and was possessed of personal property, in her own right, consisting of a few house servants, some stock, and household and kitchen furniture. That before her marriage with Tayman, she had instituted suits at law to recover certain property and claims of small value, as administratrix her late husband, James P. Tucker, to a distributive portion of which she would be entitled in the event of their recovery. That she has but one child, the son of her former husband, Dennis Boyd, an infant of about eleven years of age, who, in case of a divorce, she prays may be left in her care and custody. That said Tayman has no child, or any other person dependent upon him for support, that at the time of his marriage he was, and still continues, possessed, in his own right, of personal property, consisting of negroes, stock, &c., of the amount and value whereof your oratrix is ignorant. She then prays the court to award to her as alimony, all the real and personal property which she held and possessed in her own right at the time of her marriage with Tayman, and now remaining undisposed of by him, and

also all such portion of the estate of her former husband, James P. Tucker, as may be recovered and allotted to her as a distributee thereof, and to award to her the value of such property which she had at the time of her marriage, as has been converted and disposed of by Tayman, to be paid to her by him, and for general relief.

*The answer* of Tayman, filed on the 30th of November, 1850, admits the marriage as stated in the bill, and that his wife since that time, has resided with him and demeaned herself towards him as a chaste and with few exceptions as a loving and obedient wife. He denies that his habits generally, or his behavior towards his wife became changed shortly after his marriage, that he become excessively dissipated, or began to treat her in a cruel and forbidden manner. On the contrary, he avers, that the complainant for a long time before their intermarriage, lived in the same house with respondent, he boarding with her; that she knew him to be very much younger than herself, and on occasions seeking the society of young men who were convivial, and would sometimes indulge in dissipation, and that complainant had herself, seen respondent before her intermarriage with him, intoxicated, and that his habits in this respect were the same as they were before his marriage, until about the month of September last, since which time he has not drank any quantity, whatever, of intoxicating drinks. He denies, that he ever was utterly given up to drunkenness, or that his treatment of his wife was ever barbarous. He admits, that she has occasionally done acts calculated to reclaim him, but on many other occasions she has provoked him, disobeyed him, and fretted him into passion. He denies that he did, in the month of August or at any other time, assault complainant, or beat or bruise her person, or that she had any occasion to fear that her life would be taken. He admits, that on one occasion, she, in her disobedience, attempted, by interposing her person, to prevent respondent from whipping her negro boy, who was disobedient and impudent to respondent, and when, in his proper efforts to chastise the boy, he may have accidently struck complainant, but without intending to injure her, and, in fact, without injur-

ing her.   He admits, that through the unwarranted apprehen-
sions of the complainant, he was compelled to give security to
keep the peace, in order to be released from imprisonment, but
denies, that he has forfeited his recognizance by renewing as-
saults upon her, or in attacking her with fire arms.   He denies
that he ever did attack her with any instruments of death, or
ever forced her with her child, to seek refuge in the houses of
her neighbors.

On the contrary, he has always treated this child of the
complainant with kindness.   On one occasion, at great ex-
pense, taking him and his mother to Baltimore, to consult with
an eminent physician, on account of his health.   That in com-
plainant's excessive indulgence of this child, which respond-
ent has endeavored to correct, by teaching him obedience and
respect to his superiors ;  and in her improper protection of this
negro boy, in his impudence and wilful disobedience, most of
the unpleasant misunderstanding between complainant and this
respondent has originated.   He positively denies the charge
of adultery, and  that he has ever been guilty of adulterous in-
tercourse with other women.   He admits the statement of the
bill, in regard to the property of the complainant, the institu-
tion of suits, &c., and that the child above referred to, is the
only child of complainant, and that respondent has no child
or other person dependent upon him for support, except the
complainant and her said child in part, for without his labor,
and the aid and assistance derived from his property, complain-
ant and her family could not have been supported.   He admits
he was at the time of his marriage, and still is, possessed in his
own right of personal property, as stated in the bill, but avers
that much of his property, held by him before his marriage,
and all his earnings since, have been expended in supporting
the family of the complainant, putting up buildings on her
dower estate, and various other improvements thereon.   He
denies the right of the complainant to file this bill or to have
any relief thereby sought.

On the 23d of December, 1850, Brice T. B. Worthington,
the solicitor of the complainant, filed a petition stating that his

professional services were solicited by the complainant in this case, and that since the commencement of the same, she, (the complainant,) had been under the control and subjection of her husband, the defendant, so that she could make no provision for compensating the petitioner for his services, and the officers of this court for their fees. That upon the suits mentioned in the bill, there had been recovered, and deposited in court, by order of the Chancellor, to the credit of this cause, the sum of about $500, which the complainant consented and requested should be applied in payment of the petitioner's services, and in payment of other expenses necessarily incurred in prosecuting the case. The petition, therefore, prays for the passage of an order authorizing the application of the money aforesaid to the purposes above mentioned.

At the hearing of this petition, after answer thereto by the defendant, the following opinion was delivered on the 16th of January, 1851 :]

THE CHANCELLOR:

There can be no doubt of the power of this court, pending a bill for a divorce by a wife, to compel the husband to pay her a reasonable sum as alimony, and also, to furnish her with the means of defraying the expenses of the suit. The case of *Ricketts* vs. *Ricketts*, 4 *Gill*, 105, and several cases heretofore decided by this court, and especially the case of *Daiger* vs. *Daiger*, recently decided, are conclusive upon the question. And it must also be considered as settled, that upon an application by the wife, for temporary alimony, and for money to carry on the suit, the merits will not be looked into, the allowance being made almost, if not entirely, as a matter of course. Such was the conclusion to which I came in the case of *Daiger* vs. *Daiger*, after an examination of numerous cases in this country and in England.

But, in all these cases, it will be found, the application was made by the wife who is living apart from her husband, and who is without the means of carrying on the suit. If she be living with her husband, an allowance of alimony, *pendente lite*,

35

would be unnecessary, and improper, but it does not therefore follow, that under such circumstances, upon an application by her, the husband would not be made to supply her with money to fee counsel, and defray the expense of the suit.

The application here, however, is not by her, but by her counsel, in his own name. No precedent can be found for such a proceeding, so far as I am aware, and I am not disposed to make one, unless the necessity for it was extremely urgent.

An application by Mrs. Tayman, the complainant, asking for means to carry on the suit, and to compensate her counsel for his professional services, could not well be refused, and, perhaps, the fund in court, under the circumstances, would be most convenient and proper to use for the purpose. A reasonable proportion of that fund might be so applied, reserving the residue for such further order as might be passed in the further progress of the cause. I think, however, the present application cannot be granted, and refuse it.

———

[On the 17th of January, 1851, the complainant filed her petition to the same purport as that filed by her solicitor, and on the same day the Chancellor passed thereon the following order :]

———

The within petition is submitted by agreement of parties, under the order of the 17th of January last, and agreeably to the views expressed in the opinion of the court of the 16th of January last, it is ordered, that out of the sum deposited in court, under the order of the 16th of November, 1850, there be paid to the petitioner the sum of two hundred dollars to enable her to carry on the suit, and this court hereby reserves the power to pass such other or further order in the premises, as the exigencies of the case may hereafter, and from time to time, require.

———

[The purport and effect of the testimony taken under the commission, is sufficiently stated in the following opinion, delivered at the hearing of the cause upon its merits, on the 22d of March, 1851.]

THE CHANCELLOR:

The evidence in this cause has been very fully discussed by the counsel of the parties in their written arguments; but I do not deem it necessary to enter into a detailed examination of it. Much time and space would be consumed in such an investigation, and as each case, depending upon facts, must be governed by its own peculiar circumstances, and no general principles could be deduced from a statement of those portions of the evidence upon which my judgment in this case is founded, I shall refrain from doing more than simply to announce the conclusion to which I have come.

The question, and the only question, is, whether the complainant has succeeded in bringing her case within the 3d section of the act of 1841, ch. 262, which specifies the causes for which divorces, *a mensa et thoro*, may be decreed. The first of these causes is "cruelty of treatment," and that being the ground relied upon here, the counsel on both sides have examined the evidence, to sustain and repel the charge, very elaborately. I consider it sufficient to say, that upon a very careful reading of the pleadings and proofs, and the arguments of the solicitors of the parties, and upon full and attentive consideration of every circumstance, my judgment is, that a case of "cruelty of treatment" as those terms in the act of assembly are to be understood, has been made out, and, consequently, that the complainant is entitled to relief. Giving to those words, the meaning which has been attributed to them in the ecclesiastical courts, or to the equivalent language of the statute of New York, by an eminent judge of that state, the result is as I have stated it.

The conduct of the husband here has been, not only such as to furnish well grounded apprehensions of bodily hurt, but has been brutal, and inhuman in the extreme. The marks of violence upon the person of the wife—the blood streaming from her head, where the hair had been torn out—her flying, terror stricken, from the house, by night and by day—his chasing her with a gun—pointing it at her—declaring upon one occasion, he would blow her brains out, (all of which appears by evi-

dence free from exception) bring this case strictly within the rule, and shows, that this unfortunate woman, however imprudent she may have been, in forming such a connection, has already suffered much more than could, by any one, be deemed necessary to expiate her offence.    Imprudent as she may have been, giving to that word the most unfavorable interpretation of which it is susceptible, it by no means follows, that she shall be exposed to perpetual peril of bodily hurt, and to a course of treatment, which must infallibly shorten her life, as it has already impaired her health.

I shall, therefore, pass a decree, divorcing these parties, *a mensa et thoro*, and will restore to the complainant the property which she had when she married, or such portions thereof, as may now remain undisposed of.    But, in consideration of this restoration to the wife of her own property, and the narrow circumstances of the defendant, there will be no award of alimony.

[The decree was then passed as follows :]

This cause standing ready for hearing, and being submitted upon arguments, in writing, by the solicitors of the parties, the proceedings were read and duly considered.    And it appearing from the pleadings and proofs that the defendant has been guilty of "cruelty of treatment" of the plaintiff, so as to render it unsafe, and improper for her to cohabit with him, or to be under his dominion and control.    It is, therefore, this 24th day of March, in the year 1851, by John Johnson, Chancellor, and by the authority of this court, adjudged, ordered and decreed, that the said plaintiff and defendant, be, and they are hereby, divorced, *a mensa et thoro*.    And it is hereby declared to be the duty of each of them to live chastely during their separation, and that it will be criminal, and an act void in law, for either of them, during the life of the other, to contract matrimony with any other person.    And it is further adjudged, ordered and decreed, by the authority aforesaid, in pursuance of the 3d section of the act of 1841, ch. 262, that there be

awarded to the said plaintiff, and that the defendant restore and deliver up, to her, the real and personal estate of which she was the owner, or to which she had title at the time of her marriage with the said defendant, and of which the said defendant is now in possession, or which may be under his control, to be held and enjoyed by her, separately, and in the same right, and by the same title as said property was held and enjoyed by her prior to her intermarriage with the said defendant. And it is further adjudged, ordered and decreed, that the money deposited in court, to the credit of this cause, be paid to the said plaintiff, to be held and received by her, as she would have held, received and enjoyed the same, if she had been sole and unmarried at the time the said money was recovered or paid, as stated in the proceedings in this cause. And it is further adjudged, ordered and decreed, that the defendant pay to the plaintiff the costs of this suit, to be taxed by the Register, but for the reasons stated the prayer for alimony is overruled.

BRICE T. B. WORTHINGTON for Complainant.
A. RANDALL for Defendant.