613 A.2d 1043

**Donnie Howard BEST**

v.

**Marsha Simms BEST.**

**No. 12, Sept. Term, 1992.**

Court of Special Appeals of Maryland.

Oct. 7, 1992.

John R. Mowrey, Waldorf (Ronald H. Cooper, Upper Marlboro, on the brief), for appellant.

Linda M. Hamilton, Oxon Hill, for appellee.

Argued before BLOOM, CATHELL and DAVIS, JJ.

DAVIS, Judge.

This is an appeal by a father from an order issued by the Circuit Court for Prince George's County awarding custody of the four children of the marriage to their mother after the trial court ordered a *de novo* hearing. The dispute was initially heard before a Master for Domestic Relations Causes. The master made detailed findings of fact regarding the issues presented and filed his report and recommendations on February 1, 1991, recommending that Mrs. Best be granted a divorce on the grounds of adultery. That recommendation was adopted, and judgment of absolute divorce was entered on June 5, 1991 in favor of Mrs. Best. The master's recommendation that Mr. Best be awarded custody of the children, however, was overruled after a hearing on Mrs. Best's exceptions on June 5, 1991; and custody was granted to her.

Appellant presents the following questions for our review:

1. Did the trial court err in ordering a *de novo* custody hearing before ruling on the exceptions?
2. Did the trial court err in awarding custody of the children to Mrs. Best?

## FACTS

Donnie Howard Best (Appellant) and Marsha Simms Best (Appellee) were married on March 10, 1979. The parties are the parents of four children: Marshae Best, born January 23, 1980; Donnie Howard Best, Jr., born October 10, 1981; DeAundra Best, born October 10, 1983; and Daniel Best, born September 30, 1985. In the fall of 1988, financial problems resulted in the foreclosure on the marital home; shortly thereafter, the parties separated.

Appellee moved to Florida during December 1988, two months after the couple's separation. The children remained with appellant. A week after appellee moved to

Florida, also during December 1988, appellant took the children to Florida. The children remained with appellee until the end of the 1988–89 school year. During the summer of 1989, appellant went to Florida and brought the children back to Maryland. Appellant returned with the children to Florida during the Thanksgiving holidays in 1989 and again during the 1989 Christmas vacation. At the end of the 1989 Christmas vacation, however, appellee refused to permit the children to return to Maryland with appellant.

Early in 1990, Mr. Best returned to Florida and, without appellee's knowledge, removed the three eldest children from school and left them with a friend in Georgia. Appellee received a telephone call from the school and immediately informed Florida police. When appellant returned for the youngest child, Daniel, the police prevented appellant from obtaining physical custody of him. Appellant returned to Maryland with the three eldest children.

The parties filed Complaints and Countercomplaints for Divorce in the Circuit Court in Duval County, Florida. The Florida court refused to exercise jurisdiction in any custody dispute between appellant and appellee and determined that Maryland was the appropriate forum for a custody determination.

In Maryland, the dispute was referred to a Master for Domestic Relations Causes, Arnold Yochelson.[1] At the time of the hearing before the master, the parties' three eldest children—Marshae, Donnie, and DeAundra—were living with their father, Mrs. Rondy Warfield, and her two children in Oxon Hill, Maryland in a home owned by Mrs. Warfield. The parties' youngest child, Daniel, continued to live with appellee in Florida.

---

1. We were advised, at oral argument, that cases are assigned to a master when the time of trial is projected to be less than three days. Counsel sometimes opt to appear before a master because their cases can be heard much sooner, notwithstanding the complexity of the case or the prospect that it may have to be heard by the chancellor ultimately.

The hearing resulted in extensive fact-finding and four ninety-minute audiocassettes of the testimony. The master also interviewed the children in chambers regarding their parental preferences. The three eldest children wished to remain with their father and the youngest child with the mother. The master made detailed findings of fact regarding the issues presented and filed his report and recommendations on February 1, 1991. The master recommended that appellee be granted a divorce on the grounds of appellant's adulterous relationship with Mrs. Warfield. The master also recommended awarding custody of the children to appellant.

Thereafter, appellee noted exceptions, and a hearing was scheduled for April 17, 1991 before the Honorable Audrey E. Melbourne. Appellee could not afford to have a transcript of the proceedings before the master prepared or transmitted to the trial court. Pursuant to Maryland Rule 2–541(h)(2), the parties agreed to present the trial court with electronic recordings (seven sides of cassette tapes). Appellee submitted the tapes to the trial court as a record of the proceedings before the master. The trial judge was reluctant to accept the tapes and listen to the proceedings before the master because "Master Yochelson had the opportunity to observe the witnesses, to observe the children, their demeanor, their manner of testifying and I don't." After a brief recess, the trial court ordered a *de novo* custody hearing for June 5, 1991, to determine the effect of appellant's adulterous relationship on the children. The proceedings on June 5, 1991 yielded essentially the same facts as the hearing before the master. After the hearing on June 5, 1991, the chancellor awarded custody of the children to appellee. A Judgment of Absolute Divorce was entered on July 17, 1991.

## LEGAL ANALYSIS

### *De Novo* Hearing

■ Appellant first argues that the chancellor erred in ordering a *de novo* hearing because Maryland Rule 2–541(i)

provides that exceptions are to be decided on the evidence presented to the master unless the excepting party sets forth with particularity the additional evidence to be offered and the reasons why such evidence was not offered before the master and the Court determines that such evidence should be considered. Appellant argues that the option of conducting a *de novo* hearing is predicated upon the Court's determination that additional evidence should be considered, which in turn requires that the excepting party show with particularity the additional evidence to be offered. Appellee contends that the chancellor has absolute discretion to order a *de novo* hearing if, under any circumstances, the court is dissatisfied with the master's fact-finding or the evidentiary record before the court. We agree.

Maryland Rule 2–541(i) provides:

**Hearing on Exceptions.**—The Court may decide exceptions without a hearing, unless a hearing is requested with the exceptions or by an opposing party within five days after service of the exceptions. The exceptions shall be decided on the evidence presented to the master unless: (1) the excepting party sets forth with particularity the additional evidence to be offered and the reasons why the evidence was not offered before the master, and (2) the court determines that the additional evidence should be considered. If additional evidence is to be considered, the court may remand the matter to the master to hear the additional evidence and to make appropriate findings or conclusions, or the court may hear and consider the additional evidence *or conduct a de novo hearing.*

(Emphasis added.)

■ The respective roles of the master and the chancellor have been discussed most recently by the Court of Appeals in *Domingues v. Johnson,* 323 Md. 486, 593 A.2d 1133 (1991), and *Kirchner v. Caughey,* 326 Md. 567, 606 A.2d 257 (1992). The law is well settled that the chancellor may order *de novo* fact-finding in whole or in part (unlike an appellate court which defers not only to the fact-finding but any legitimate verdict, disposition, or judgment emanating

from that fact-finding absent clear error). *Wenger v. Wenger,* 42 Md.App. 596, 602, 402 A.2d 94 *cert. granted,* 286 Md. 755 (1979), *appeal dismissed per stipulation,* January 1, 1980, citing *Swisher v. Brady,* 438 U.S. 204, 98 S.Ct. 2699, 57 L.Ed.2d 705 (1978). Where the chancellor elects to rely exclusively on the master's report, he should defer to the fact-finding of the master where that fact-finding is not clearly erroneous. *Id.* The chancellor, unlike the appellate court, reserves unto himself what to make of those facts since the decision-making function is vested exclusively in the chancellor. *Id.*

■ In the case before us, significantly, the chancellor declined to rely on or consider the fact-finding of the master. Since the chancellor in the case *sub judice* did not rely on the fact-finding of the master, the narrow question we must decide is whether the chancellor may simply disregard the fact-finding of the master. Clearly, she is authorized to do so. The Court of Appeals, in *Domingues,* held that

the chancellor incorrectly accepted the recommendations of the master upon a finding that those recommendations were not clearly erroneous, instead of subjecting the master's fact-finding to a clearly erroneous test and then exercising his independent judgment concerning the proper conclusion to be reached upon those facts.

*Id.,* 323 Md. at 490, 593 A.2d 1133. The Court of Appeals further held:

Before leaving the subject of the appropriate interaction between the chancellor and master, we comment briefly on the fact-finding process. The Court of Special Appeals concluded that "many of the Masters' findings of fact are second level findings of fact and therefore not entitled to deference." *Johnson v. Domingues, supra,* 82 Md.App. [128] at 131 n. 1, 570 A.2d 369.

. . . .

The Court of Special Appeals took too narrow a view of the "facts" found by the master that should be presumed

correct and rejected only if unsupported by the record or otherwise clearly erroneous.

*Id.*, 323 Md. at 493–94, 593 A.2d 1133. The *Domingues* Court opined that, where there are challenges to the findings of fact of the master, the chancellor should state, in an oral or written opinion, how he resolved the challenges. *Id.*, 323 Md. at 496, 593 A.2d 1133. Ultimately, the chancellor, "[h]aving determined which facts are properly before him, and utilizing accepted principles of law, . . . must then exercise independent judgment to determine the proper result." *Id.*

Likewise, the Court of Appeals, in *Kirchner*, 326 Md. at 571, 606 A.2d 257, citing *Domingues*, vacated the order denying exceptions and remanded the case for further consideration because it determined that the chancellor there did not apply his independent judgment to the facts properly found by the master. The decisions in *Domingues* and *Kirchner* reinforce the well-established principle that it is ultimately the chancellor's decision which "significantly impacts upon the lives of the parents and children involved." *Domingues*, 323 Md. at 492, 593 A.2d 1133. Although *Domingues* speaks directly to the requirement that the chancellor exercise independent judgment, the decision in no way changes the role of the masters as ministerial assistants to the judges. *See Wenger v. Wenger*, 42 Md.App. 596, 602, 402 A.2d 94, *cert. granted*, 286 Md. 755 (1979), *appeal dismissed per stipulation*, January 1, 1980, citing *Swisher v. Brady*, 438 U.S. 204, 98 S.Ct. 2699, 57 L.Ed.2d 705 (1978); *see also Levitt v. Levitt*, 79 Md.App. 394, 398–99, 556 A.2d 1162 *cert. denied*, 316 Md. 549, 560 A.2d 1118 (1989).

Neither do the decisions in *Domingues* and *Kirchner* change the conclusion that "[l]itigants in a child custody proceeding, as in all judicial proceedings, are entitled to have their cause determined ultimately by a duly qualified judge of a court of competent jurisdiction." *See Ellis v. Ellis*, 19 Md.App. 361, 365, 311 A.2d 428 (1973), citing Md. Constitution, Article IV, § 1; Md.Ann.Code art. 26, § 30;

Md.Rule 71a. "While the system of resorting to Masters is one of long standing and undoubtedly has salutary effects resulting in the more expeditious dispatch of the judicial process, the system cannot supplant the ultimate role of judges in the judicial process itself." *Ellis,* 19 Md.App. at 365, 311 A.2d 428 (footnote omitted).[2]

Considering the manner in which masters assist in the adjudication of cases, the Court of Appeals, in *Domingues,* 323 Md. at 497, 593 A.2d 1133, observed:

Although the use of masters has proven beneficial in a variety of cases, the question of the advisability of referring contested custody cases to a master in those instances where the trial court has discretion to do so, is one that should be carefully considered. If a chancellor must essentially duplicate the effort and dedication of time of a master in order to ultimately decide a case, nothing has been gained by referral to the master. On the other hand, if, because of the expertise of the master, or for other reasons, parties often accept the recommendation of the master and exceptions are infrequently filed, the use of a master may be advisable.

■ Recognizing that the chancellor must make the ultimate decision while bearing in mind that the master is ofttimes a specialist in his field and thus able to bring valuable insights to the proceedings, it is clear that the chancellor must be granted broad authority to reject the findings of the master in whole or in part and, where it is deemed appropriate, to conduct a *de novo* hearing in any case in which the chancellor is not satisfied that a proper decision can be rendered based on the proceedings before

---

**2.** Generally, only the total lack of any factual review by a chancellor prior to the disposition of a case is condemned. *Wenger,* 42 Md.App. at 609, 402 A.2d 94, citing *Ellis v. Ellis,* 19 Md.App. at 363, 311 A.2d 428. The Appellant's contention that a chancellor "must listen to the recorded testimony of the proceedings or read a transcript of the proceedings before the Domestic Relations Master in its entirety" is without any support in law. *See Wenger, supra.* Judge Melbourne had an adequate factual predicate for her ultimate disposition of the custody dispute.

the master. Since, under *Domingues*, the chancellor is required to exercise her independent judgment, including matters pertaining to credibility,[3] the chancellor must have the authority to conduct a *de novo* hearing and to make that independent determination from such a hearing where it is felt to be appropriate and necessary.

In the case *sub judice*, the trial court had broad discretion under Md.Rule 2–541(i) and the common law to choose whether to rely on the fact-finding of the master or to order a *de novo* hearing. The chancellor chose not to rely on the fact-finding of the master but rather chose to reassess the credibility of the witnesses and to order a *de novo* hearing.

We therefore hold that the chancellor did not err in ordering a *de novo* hearing to have an adequate factual predicate for the ultimate disposition of the case.

## CUSTODY AWARD

Appellant next argues that the chancellor erred in awarding the custody of the minor children to appellee because it failed to apply the "best interests of the child" standard. *Montgomery County Department of Social Services v. Sanders*, 38 Md.App. 406, 381 A.2d 1154 (1977). Appellant argues that the trial court (1) ignored the previous proceedings before the master, and (2) made no determination of any of the particular factors that a court should consider in deciding custody cases. Having decided that the trial court is free to disregard the master's findings of facts and order a *de novo* hearing, we now address appellant's second

---

**3.** The Court of Appeals, in *Domingues*, 323 Md. at 494, 593 A.2d 1133, held that first-level facts found by a master might include opinions or conclusions and are often drawn from a variety of observations and inferences, *i.e.*, a finding that a witness did not testify truthfully. The Court further concluded that the statement "I find as a fact that the witness testified falsely" would be viewed differently from "In my opinion, the witness testified falsely." The chancellor, in the case *sub judice*, specifically indicated she wanted to assess the demeanor and credibility of the witnesses in person.

contention that the trial court made no determination of any of the particular factors that a court should consider in deciding custody cases. Although appellant correctly notes that the applicable test for awarding custody is the "best interests of the child" standard, we are unpersuaded by appellant's arguments and explain.

The scope of this Court's review is limited to whether the trial judge abused his discretion or whether his findings of fact are clearly erroneous. *Sanders*, 38 Md. App. at 419, 381 A.2d 1154, citing *Davis v. Davis*, 280 Md. 119, 372 A.2d 231 (1977). "The chancellor's findings of fact are to be given great weight since he has the parties before him and has 'the best opportunity to observe their temper, temperament and demeanor, and so decide what would be for the child's best interest....'" *Sanders*, 38 Md.App. at 418–19, 381 A.2d 1154, citing *Kartman v. Kartman*, 163 Md. 19, 23, 161 A. 269 (1932). Therefore, this Court may not set aside the factual findings of the chancellor unless they are clearly erroneous, *Sanders*, 38 Md.App. at 419, 381 A.2d 1154, citing *Davis*, 280 Md. 119, 372 A.2d 231; and absent a clear showing of abuse of discretion, the decision of the trial judge will not be reversed. *Id.*

Present methods for determining a child's best interest are time consuming and involve a multitude of intangible factors that ofttimes are ambiguous. What is in the best interest of the child varies with each individual case. The fact finder is called upon to evaluate the child's life chances in each of the homes competing for custody and then to predict who will serve the child's best interest. Ultimately, what is in the child's best interest equals the fact finder's best guess. *Id.*

The court examines numerous factors and weighs the advantages and disadvantages of the alternative environments. The criteria for judicial determination include: 1) fitness of the parents; 2) character and reputation of the parties; 3) desire of the natural parents and agreements between the parties; 4) potentiality of maintaining natural

family relations; 5) preference of the child; 6) material opportunities affecting the future of the child; 7) age, health, and sex of the child; 8) residences of parents and opportunity for visitation; 9) length of separation from the natural parents; and 10) prior voluntary abandonment or surrender. *See Sanders*, 38 Md.App. at 420, 381 A.2d 1154; *see also Queen v. Queen*, 308 Md. 574, 521 A.2d 320 (1987). While the court considers all the above factors, it will generally not weigh any one to the exclusion of all others. The court should examine the totality of the situation in the alternative environments and avoid focusing on any single factor such as the financial situation or the length of the separation. *Sanders*, 38 Md.App. at 420–21, 381 A.2d 1154.

■ The case *sub judice* reveals that in early 1990, without their mother's knowledge or consent, appellant took the three eldest children from Florida and brought them back to Maryland. But for Florida police intervention, appellant would also have taken the youngest child. At the time of the hearing, appellant and the three eldest children lived with Mrs. Warfield and her two children. There, the children lived in a three bedroom house. Two of the bedrooms were to be the sleeping quarters for the six children of appellant and Mrs. Warfield. The master's thirteen page report, which included extensive findings of fact and was reviewed by the trial court, also recommended that appellee be granted a divorce on the grounds of appellant's adulterous relationship with Mrs. Warfield. The trial court also noted, from both the testimony of appellant and Mrs. Warfield, that there were plans to relocate to Suffolk, Virginia, which would likely destabilize and traumatize the children further. The master's report further indicated that appellant was fiscally irresponsible, having failed to file income tax returns for 1988, 1989, or 1990.

The record further reveals that appellee is in the position to offer her children a safe, comfortable, stable, and loving home. She is employed by the University Medical Center of Jacksonville as a patient advocate. She expressed plans for a larger home depending on the outcome of the custody

hearing. Appellee is a model mother to her children and has demonstrated a commitment to their social, spiritual, physical, and educational well-being. *See Queen,* 308 Md. 574, 521 A.2d 320.

Applying the "best interests of the child" standard, we find nothing in the record to substantiate appellant's claim that the chancellor's findings of fact were clearly erroneous or that the court abused its discretion in awarding custody of the children to appellee. The chancellor had an opportunity to observe the parties' temper, temperament, and demeanor to determine what would be in the best interest of the children. *Sanders,* 38 Md. at 419, 381 A.2d 1154. The record reveals that there is ample evidence to support the trial court's custody award of the children to appellee as in the best interests of the children.

We therefore hold that the chancellor did not abuse her discretion in awarding custody of the children to appellee.

## SANCTIONS

Appellee, in her brief and in oral argument, has asked us to find that this appeal was brought without substantial justification and to impose sanctions. Appellant's contention is that the language of Md.Rule 2–541(i) that "exceptions *shall* be decided on the evidence presented to the Master unless ..." is mandatory, and that there are no Maryland cases that speak directly to the chancellor's authority to conduct a *de novo* hearing in the absence of a determination by the court that "additional evidence should be considered." Although we reject the argument advanced by appellant, we are not satisfied that the argument lacks substantial justification as contemplated by Maryland Rule 1–341. As we pointed out in *Art Form v. Columbia Homes,* 92 Md.App. 587, 598, 609 A.2d 370 (1992), citing *Zdravkovich v. Bell Atl–Tricon Leasing Corp.,* 323 Md. 200, 592 A.2d 498 (1991):

> Furthermore, sanctions should be reserved "for the deterrence of unnecessary or abusive litigation." *Id.* at

209, 592 A.2d 498.  As further observed by the Court of Appeals:

> The imposition of sanctions is to deter litigation that clearly lacks merit, but not to "stifle the enthusiasm or chill the creativity that is the very lifeblood of the law."
> ... In his appellate brief, Zdravkovich indicates that one of the bases for appeal was "the propriety of granting a judgment when it is known that [a litigant's] absence is caused by his appearance in another court." This issue, in its factual context, does not lack substantial justification, and there is no allegation or basis for a finding that Zdravkovich pursued his appeal in bad faith.

*Id.* at 212, 592 A.2d 498 (citations omitted).

We accordingly decline to grant appellee's request for sanctions.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.