625 A.2d 381

**Diana G. JAMES**

v.

**Jon L. JAMES.**

**No. 1579, Sept. Term, 1992.**

Court of Special Appeals of Maryland.

June 3, 1993.

440

Paul A. Dorf (Michael G. Hendler, Avery Aisenstark, Charles A.P. Christianson and Adelberg, Rudow, Dorf, Hendler & Sameth, on the brief), Baltimore, for appellant.

Patricia E. McDonald (J. Michael Lawlor, on the brief), Towson, for appellee.

Argued before GARRITY, DAVIS and HARRELL, JJ.

DAVIS, Judge.

This appeal is from a pendente lite alimony order from the Circuit Court for Baltimore County (Kahl, J.). On September 5, 1991 Diana G. James (appellant) filed a complaint for absolute divorce against Jon L. James (appellee). On September 23, 1991 appellee filed a counter-complaint for limited divorce.

On February 3, 1992 appellee requested and was granted a master's hearing on his request for temporary alimony and attorney's fees. After the presentation of testimony and evidence by both parties, the master issued a report in which he recommended an award of temporary alimony to appellee of $4,500 per month and $5,000 in counsel fees.

On May 15, 1992 appellee filed exceptions to the written report and recommendation of the master, and on June 11, 1992 he submitted a memorandum in support of the exceptions and requested a hearing. The trial court granted appellee's request for a hearing.

After conducting a hearing on the exceptions, the court issued a written opinion awarding appellee temporary alimony in the amount of $8,000 per month. Judgment in accordance with that opinion was entered on August 11, 1992. On August 21, appellant filed a motion to Alter or Amend the trial court's August 11, 1992 order. The trial court denied the motion, and appellant noted a timely appeal, in which she presents the following issues for our review:

Whether the trial court erred in considering educational expenses when calculating an award of temporary alimony.

Whether, by reason of the proposed educational program and the demonstrated likelihood it would increase appellee's earning capacity, the trial court erred in granting an award of alimony *pendente lite* based, in part, on projected educational expenses that must be shown to increase earning capacity of dependent spouse.

Whether the trial court erred in not dismissing exceptions as vague and inadequate.

## FACTS

### Master's Report and Recommendations

The parties were married on October 21, 1974; they separated on May 2, 1990. No children were born during the course of the marriage.

Prior to the marriage, appellee earned a Bachelor of Arts degree in Sociology and East Asian Studies. Appellee then served with U.S. Army Intelligence from 1965 to 1968, thirteen months of which he was in Viet Nam. Thereafter, appellee returned to the United States to teach at the U.S. Military Intelligence School at Fort Holabird. In 1971 appellee began graduate school at Johns Hopkins University, where

he met appellant. Appellee was last employed from 1970 to 1973 as an administrator for a university study, a position for which he received graduate credits. Appellee received a Masters degree in Social Relations (Sociology) from Johns Hopkins University in 1983.

Neither party was formally employed during the course of the marriage. In 1983 appellee studied securities management for one year at the Advest Company. Appellee testified that he kept extensive records of investment trends. He also testified that, during the course of the marriage, he worked on the couple's personal finances and that essentially he was a homemaker. He claimed that he handled all the finances; wrote checks; managed investment relations; "was liaison" with lawyers, trustees, and banks; and was responsible for the maintenance and negotiated the purchase of the residence recently sold by appellant. Essentially, appellee managed appellant's money, to the extent that the trust arrangements made by her deceased father did not already provide for such management. Appellee also had some training in family mediation, having received a training certificate in this field after studying at the Lemmon Institute in San Francisco and continued with advanced training courses in Maryland. In 1989 appellee began training as a pro bono family mediator for the Baltimore County Divorce Mediation Project. Appellant worked for one week in a health restaurant approximately ten years ago.

The parties reported an income in excess of $500,000 on the last joint tax return they filed in 1991. The income was generated by trusts established by appellant's late father. For the year 1990, the couple reported an adjusted gross income of $548,572. Appellant testified that she receives income from trusts and investments. According to an expense sheet filed with the master, appellant had an income of $43,000 per month and expenses totalling $28,308. Appellant's net worth is estimated at $15,000,000, including $7,000,000 from a July 1992 trust distribution. The couple owned a home in Baltimore County, which appellant had recently sold for $484,-000. The parties had several telephone-equipped automobiles.

During their marriage, the parties spent up to $20,000 per year on travel.

Appellee based his expense sheet on past expenditures while residing with appellant. His expenses included traveling, phone, cars, and the educational costs of pursuing an advanced degree. Appellee wants to attend graduate school to obtain a doctorate in Psychology in order to pursue his mediation career. He was accepted into a doctoral program in Clinical Psychology at Duquesne University in 1992. The cost of tuition and fees at Duquesne University for the advanced degree is $10,760 per year.

Admittedly, appellant left appellee in May 1990. Appellant testified that she now lives with a boyfriend in a house she had purchased for $675,000, now estimated to be valued at $1,000,-000. After the couple's separation, appellee continued to maintain the marital residence and pay bills from the couple's joint bank accounts, spending approximately $200,000. The residence was subsequently sold for $484,000. Appellant then paid three months rent for appellee at an apartment complex.

The master determined that appellee's minimal earning capacity was approximately $25,000 to $30,000 per year and concluded that additional education expenses for appellee were not appropriate. The master recommended awarding appellee $4,500 monthly in *pendente lite* alimony. Appellee filed exceptions to the master's report and recommendations, challenging the amount of the alimony.

### Chancellor's Hearing

On July 14, 1992 the trial court held a hearing on the exceptions. In a written opinion, the chancellor upheld the master's fact-finding: (1) appellant has the ability to contribute to the temporary support of her husband, (2) neither party was employed during the course of the marriage, and (3) appellee is able to be employed. The chancellor, citing *Maynard v. Maynard*, 42 Md.App. 47, 399 A.2d 900 (1979), recognized that the purpose of alimony *pendente lite* was based on the need of the economically dependent spouse. The chancel-

lor stated, in passing, that the master's recommendations regarding appellee's pursuit of his doctoral degree was only a recommendation and was not binding on the chancellor. Applying his independent judgment, the chancellor concluded that, while some expenses were excessive, others were within reason in light of the standard of living to which the dependent spouse (appellee) was accustomed.

With regard to appellee's proposed educational program, the chancellor opined:

> The Defendant has expressed his intention and desire to matriculate into graduate study at Duquesne University and has projected many of his expenses to reflect that plan. He wants, accordingly, to defer employment decisions pending completion of his doctoral program. Although he is theoretically employable now, he should be able to increase the likelihood of gainful employment if he is permitted to enhance his credentials as he anticipates. His plans may, too, ultimately benefit the Plaintiff, whose exposure to rehabilitative and/or permanent alimony liability potential is considerable.
>
> . . . .
>
> The Court concludes that Defendant should receive, for his living expense, education and suit money, the sum of eight thousand dollars ($8,000.00) per month as alimony pendente lite.
>
> . . . .
>
> As previously mentioned, Master Dugan has recommended that the Defendant abandon his pursuit of a doctoral degree and instead devote himself to employment. This recommendation can only be a recommendation, however, and is not susceptible of being embodied in an order of Court. Moreover, the Court will reject it, for reasons already set forth.

The chancellor thus included the appellee's current and future educational projections in his $8,000 per month alimony *pendente lite* award.

## LEGAL ANALYSIS

### Vagueness of Exceptions

We shall consider together the first two issues raised by appellant; however, we first address the last contention presented. She asseverates that the chancellor should have dismissed appellee's exceptions to the master's report and recommendations for vagueness. Appellant relies upon Md. Rule S74A.d, which provides:

> Within five days after recommendations are placed on the record or served pursuant to section c of this Rule, a party may file exceptions with the clerk. Within that period or within three days after service of the first exceptions, whichever is later, any other party may file exceptions. *Exceptions shall be in writing and shall set forth the asserted error with particularity. Any matter not specifically set forth in the exceptions is waived unless the court finds that justice requires otherwise.* [Emphasis added.]

Citing *Bris Realty Company v. Phoenix Savings and Loan Ass'n, Inc.,* 238 Md. 84, 208 A.2d 68 (1955), appellant asserts that appellee's exceptions to the master's report and recommendations "were general in form and failed to point out any finding of fact not supported by the testimony before the master, or any law misapplied by him." Appellant summarizes her contention by claiming that "none of the numbered exceptions contained in Jon's pleading allege error on the part of the master." She claims that the exceptions simply observe a fact regarding the parties' marriage and separation or states in "a matter of fact fashion" what the master found at the hearing. While pointing out that the chancellor observed that "most of the specific exceptions do not allege error of any kind on the part of the master," appellant concedes that the court ultimately concluded that it was "possible to glean" from the exceptions appellee's belief that the master erred in finding that appellee could earn at least $25,000 a year and in finding that his needs would be met by the award of an additional $4,500 a month.

Appellee counters that appellant's argument is "almost identical to" the argument made by the husband in *Best v. Best,* 93 Md.App. 644, 613 A.2d 1043 (1992), suggesting that we rejected a similar argument in that case. *Best* more specifically focused on Md.Rule 2–541(i), which provides:

> **Hearing on Exceptions.**—The Court may decide exceptions without a hearing, unless a hearing is requested with the exceptions or by an opposing party within five days after service of the exceptions. The exceptions shall be decided on the evidence presented to the master unless: (1) the excepting party sets forth *with particularity the additional evidence to be offered* and the reasons why the evidence was not offered before the master, and (2) the court determines that the additional evidence should be considered. If additional evidence is to be considered, the court may remand the matter to the master to hear the additional evidence and to make appropriate findings or conclusions, or the court may hear and consider the additional evidence or conduct a de novo hearing. [Emphasis supplied.]

Our discussion in *Best* devolved upon the question of whether the chancellor was empowered to conduct a de novo hearing in a case where the excepting party failed to designate evidence that should be considered in addition to that already presented to the master. We concluded that the chancellor had absolute discretion to order a de novo hearing if, under any circumstances, the court was dissatisfied with the master's fact-finding or the evidentiary record before the court. *Best,* 93 Md.App. at 650, 613 A.2d 1043.

The issue presented on this appeal is simply whether the alleged failure of the excepting party to indicate wherein the master committed error requires the chancellor to overrule the exceptions.

As appellee points out, *Bris Realty* involved claims against Phoenix Savings and Loan, which had gone into conservatorship and then into reorganization under the jurisdiction of the Circuit Court for Baltimore City. Disputed claims were sub-

mitted to a special master in chancery whose appointment required him to take testimony and make "a final determination, subject to further order of this Court. . . ." Bris Realty excepted to certain of the final determinations by the master. Since Bris Realty had failed to point out the particular errors objected to, the court ruled on the general exceptions before it, refusing to permit Bris Realty to present testimony before the court at a de novo hearing. The Court of Appeals held that exceptions to a report of an auditor and master will not be sustained unless his findings of fact were clearly erroneous or unless the master misapplied the law to his findings of fact.

Reduced to its simplest terms, what the Court was saying in *Bris Realty* was that the chancellor was not obliged to hold a hearing on every phase of the litigation that the exceptant found to be unacceptable. As the Court observed in *Bris,* 238 Md. at 89, 208 A.2d 68:

> "One of the purposes of seeking the advice and recommendations of an auditor and master is to conserve the time of the court. If claimants had the right to offer new or additional testimony before the court, not only would there be no saving of the court's time but, perhaps, the whole structure of the auditor's and master's report would be worthless, thus requiring a remand and revision."

In the case *sub judice,* the chancellor, in fact, conducted a hearing on the exceptions. Thus, unlike *Bris,* there was no refusal to conduct a hearing because of the court's inability to fathom the alleged error. Moreover, Rule S74A.d contains the proviso that exceptions are waived for lack of specificity "unless the court finds that justice requires otherwise." This language clearly authorizes the chancellor, where he deems justice requires, to entertain the exceptions.

While we agree with appellant that the exceptions essentially contain a recounting of what occurred before the master as well as statements of fact regarding the history of the case, appellant acknowledges that exception number nine most closely approximates an affirmative allegation of error. Number nine states:

That the defendant, Jon L. James, respectfully suggests that the above stated minuscule amount of alimony does not in any way reflect his needs which were adequately demonstrated in his expense sheets and does not properly take into consideration the ability to pay demonstrated by Diana Glass James.

Significantly, the chancellor apparently agreed with appellee in his characterization of the alimony as "minuscule" since, based on the exceptions presented, the chancellor increased the alimony *pendente lite* from $4,500 to $8,000 per month. We believe that exception number nine was specific enough to afford appellant sufficient notice to respond and provided the degree of particularity required by law to allow the chancellor to review the findings of the master.

### Alimony Pendente Lite

Appellant next argues that the trial court erred in considering appellee's educational projections in making a *pendente lite* or temporary alimony award. Appellant argues that an educational expense is more appropriate for consideration in awarding permanent or rehabilitative alimony. Because we find that the chancellor erred in considering the educational expenses when calculating his *pendente lite* alimony award, we shall vacate the order and remand the case for further proceedings consistent with this opinion.

The issue before us is whether inclusion of a dependent spouse's projected future educational expenses are proper in a *pendente lite* alimony award. We hold that, under the facts of this case, the award of educational expenses to appellee did not comport with the recognized purposes for alimony *pendente lite*. Maryland Fam.L.Code Ann. § 11–102 provides:

In a proceeding for divorce, alimony, or annulment of marriage, the court may award alimony pendente lite to either party.

When interpreting this or any other statutory provision, we first look to its text. A basic tenant of statutory construction

requires that "statutes are construed according to their plain and ordinary meaning when those words are not ambiguous." *County Council for Montgomery County v. Supervisor of Assessments of Montgomery County,* 274 Md. 116, 120, 332 A.2d 897 (1975).

Alimony *pendente lite* is defined as "an allowance made pending a suit for divorce or separate maintenance, including a reasonable allowance for preparation of the suit as well as for support." *Maynard v. Maynard,* 42 Md.App. 47, 49, 399 A.2d 900 (1979), citing *Black's Law Dictionary* (4th ed., 1951). An award of alimony *pendente lite* is a monetary payment pending the outcome of litigation that has been instituted but that has not been concluded. *Id.*

Generally, temporary spousal support is based primarily on considerations of the reasonable needs of the recipient spouse, balanced against the other spouse's ability to pay. *Maynard,* 42 Md.App. at 51, 399 A.2d 900 (*pendente lite* alimony to maintain status quo and allow a spouse to prosecute or defend the action); *Gonzalez v. Gonzalez,* 446 So.2d 237 (Fla. Dist. Ct.App.1984); *MacReynolds v. MacReynolds,* 29 Colo.App. 267, 482 P.2d 407 (1971) (purpose of temporary alimony is to allow spouse to live in accustomed manner and provide means to litigate the controversy properly). The purpose therefore of a *pendente lite* alimony award is "to maintain the status quo of the parties so the wife [or husband] would not suffer financial hardship" pending final resolution of the divorce proceedings. *See Wilson v. Wilson,* 87 Md.App. 547, 553, 590 A.2d 579 (1991). In *Maynard,* 42 Md.App. at 51–53, 399 A.2d 900, this Court explored the rationale for the *pendente lite* alimony award:

> In *Nelson on Divorce and Annulment* (2d ed., 1945), alimony *pendente lite* is spoken of in terms of "temporary alimony." In § 12.13 it is stated:
>
> > "An application for temporary alimony or for suit money, in a pending matrimonial action, while not a separate suit, is a collateral proceeding within the basic suit, and is

a proceeding for a separate order, independent of the final judgment in the action."

In § 12.24, Nelson states:

The applicant for the allowance must show, at least prima facie * * * in order to obtain an allowance pendente lite of temporary alimony, allowance for support of children, and/or suit money, including counsel fees, (1) the pendency of the matrimonial action in which the allowance is sought; (2) the existence of a marriage between the parties; (3) a probable cause of action or defense on the part of the applicant, with reasonable probability of success of the applicant on trial; (4) financial inability of the wife [or husband] to support herself [or himself] and/or prosecute or defend the action; and (5) the ability of the husband [or wife] to make the payments.

We then distinguished in *Maynard,* 42 Md.App. at 49, 399 A.2d 900, permanent alimony from alimony *pendente lite:*

Here, however, we are concerned with the difference in the amount of alimony pendente lite and the amount of permanent alimony awarded, which, in our opinion, is not comparable to a situation where a court modifies an award of permanent alimony previously granted. As the nomenclature indicates, an award of alimony pendente lite is a monetary payment pending the outcome of litigation which has been instituted but which has not been concluded.

Quoting the Court of Appeals in *Flanagan v. Flanagan,* 270 Md. 335, 339, 311 A.2d 407 (1973), which had quoted its holding in *Timanus v. Timanus,* 178 Md. 640, 642, 16 A.2d 918 (1940), we explained:

" 'It is a general rule that a court, before determining the award of alimony, should consider the maintenance of the wife [or husband] in accordance with the husband's [or wife's] duty to support her suitably, together with the husband's [or wife's] wealth and earning capacity. In addition to the financial circumstances of the parties, the court should also usually consider their station in life, their age and physical condition, ability to work, the length of time

they lived together, the circumstances leading up to their separation, the fault which destroyed the home, and their respective responsibilities for the care and support of the children.' "

*Maynard,* 42 Md.App. at 50–51, 399 A.2d 900. We further opined, at 51, 399 A.2d 900:

It is perfectly apparent that all the factors which a chancellor must consider in a divorce proceeding looking to an award of permanent alimony cannot be developed in a preliminary hearing which forms the basis of an award pendente lite. *It is only after a full and complete hearing on the merits of the respective claims of the parties that a chancellor is in a position to formulate a judgment which has a greater degree of permanency than the judgment he pronounces after a hearing on temporary alimony.* [Emphasis supplied.]

The considerations for an award of permanent alimony are now codified in Md. Fam. L.Code Ann. § 11–106, including § 11–106(b)(2), which specifically allows the chancellor to consider the time necessary for the party seeking alimony to gain sufficient education or training to enable that party to find suitable employment.[1]   During oral argument before this

---

1.   Maryland Fam. L.Code Ann. § 11–106, governing the determination of amount and duration of an alimony award, provides, in pertinent part:

(b) *Required considerations.*—In making the determination, the court shall consider all the factors necessary for a fair and equitable award, including:

(1) the ability of the party seeking alimony to be wholly or partly self-supporting;

(2) the time necessary for the party seeking alimony to gain sufficient education or training to enable that party to find suitable employment;

(3) the standard of living that the parties established during their marriage;

(4) the duration of the marriage;

(5) the contributions, monetary and nonmonetary, of each party to the well-being of the family;

(6) the circumstances that contributed to the estrangement of the parties;

(7) the age of each party;

Court, appellee pointed out that § 11–106 provides for calculation of "an alimony award" without distinguishing between alimony *pendente lite* and permanent alimony. He further argued that *Maynard* predated the enactment of § 11–106 and, hence, is supplanted by the terms of the legislation. We disagree.

In the case *sub judice*, there is no dispute as to the pendency of the matrimonial action in which the allowance is sought, the existence of the marriage between the parties, a probable cause of action or defense on the part of the appellee with a reasonable probability of his success at trial, and the ability of appellant to make the payments. *See Maynard*, 42 Md.App. at 50, 399 A.2d 900. The dispute concerns the financial ability of appellee to support himself and the chancellor's inclusion of appellee's educational projections in his $8,000 per month alimony *pendente lite* award. Appellant claims that appellee should be content with a $25,000 to $30,000 potential earning capacity and that the chancellor erred in calculating appellee's educational projections in his $8,000 per month alimony *pendente lite* award. Appellee claims that it would be unfair to postpone further his newly conceived goal of attending graduate school, pending the outcome of the resolution of the divorce litigation,[2] in light of

---

(8) the physical and mental condition of each party;

(9) the ability of the party from whom alimony is sought to meet that party's needs while meeting the needs of the party seeking alimony;

(10) any agreement between the parties;  and

(11) the financial needs and financial resources of each party, including:

(i) all income and assets, including property that does not produce income;

(ii) any award made under §§ 8–205 and 8–208 of this article;

(iii) the nature and amount of the financial obligations of each party;  and

(iv) the right of each party to receive retirement benefits.

**2.** Neither party explained during oral argument before us why no petition has been filed to conduct a hearing to determine permanent alimony.

his post-separation acceptance into the Duquesne graduate degree program in psychology.

According to an expense sheet filed with the master, appellant had an income of $43,000 per month. The chancellor noted that there was evidence that appellant's income may be as high as $2,000,000 per year, but he could not find the $43,000 per month income clearly erroneous. Appellant's net worth is estimated at $15,000,000. There was evidence that the parties led a lavish lifestyle, had several automobiles, and an expensive residence.

Appellee clearly had the requisite educational and employment skills to be self-supporting, pending the resolution of the divorce litigation, even in light of the standard of living to which he had become accustomed. Appellee pursued numerous educational courses during the marriage, including the study of securities management for one year at the Advest Company in 1983 to ensure that the myriad of investment firms and banks with which appellant's assets were deposited properly managed her money. He also received his Master's degree in Social Relations during the course of the marriage.

■ Our interpretation of § 11–102 and our holding in *Maynard* constrains us to conclude that the chancellor's inclusion of an annual educational expense, which is predicated on a projected six year course of graduate study, is not properly includable in a *pendente lite* alimony award under § 11–102 and therefore not proper as a part of the chancellor's *pendente lite* award. The statutory scheme at issue views consideration of long-term educational expenses as more appropriate after a full and complete hearing on the merits of the respective claims of the parties to formulate a judgment that has a greater degree of permanency or that is intended to address rehabilitation. *See* § 11–106(b)(2); *Holston v. Holston,* 58 Md.App. 308, 473 A.2d 459, *cert. denied,* 300 Md. 484, 479 A.2d 372 (1984).

As appellant's counsel pointed out in oral argument before this Court, attorneys approach a hearing where the goal is to determine the appropriate alimony *pendente lite* in a far

different fashion than counsel do when what is at stake is an award of greater duration. We think that, patently, the modification of the award recommended by the master of $4,500 per month to $8,000 per month, including the projected educational expense, was clearly erroneous. We are not satisfied that the record demonstrates that the projected expenses for the pursuit of an advanced degree in existential phenomenological psychology are necessary to preserve the status quo of appellee's lifestyle while the suit is pending.

It may well be decided at a hearing on a petition for permanent alimony that appellee is indeed entitled to the $8,000 award or even more; however, within the limited purview of the purpose for setting alimony *pendente lite* as well as the more limited presentation by counsel for both sides in establishing the appropriate monetary award to be made to the dependent spouse, the chancellor improperly took into consideration the educational expense that was not shown to accomplish what alimony *pendente lite* was designed to achieve. In other words, it could hardly be contended that the $10,760 per year for tuition and fees awarded to permit appellee to pursue the desired advanced degree would operate to "maintain the status quo of the party" or would prevent the dependent spouse from "suffer[ing] financial hardship pending final resolution of the divorce proceedings." As we said in *Maynard*, all of the factors that must be considered when attempting to arrive at an award of permanent alimony cannot be developed in a preliminary hearing held for the purpose of determining an award *pendente lite*. Not only is such an abbreviated hearing not designed to take into account all of the necessary factors in arriving at educational costs for a spouse whose economic dependence is questionable, clearly a question of fundamental fairness arises where counsel must anticipate the higher stakes and prepare accordingly.

We are not unmindful of the line of cases cited by appellee in which courts of other jurisdictions have found that educational expenses were allowable in a proceeding to determine alimony *pendente lite*. We do not find the authority cited by appellee, however, to be persuasive. In *McNulty v. McNulty*,

347 Pa.Super. 363, 500 A.2d 876 (1985), the Superior Court held that the chancellor properly awarded the educational expenses to a wife who had been working during the three year marriage of the parties as a full-time phlebotomist in a local hospital at approximately one-half of her spouse's salary and who had reduced her hours to part-time in order to return to school for her bachelor of science degree in nursing. At the time of the separation between the parties, appellee had only nineteen credits to complete at a local college, but was compelled by financial necessity to return to the home of her parents in Milwaukee, Wisconsin where her attendance at a college there resulted in a considerable increase in the expenditure for tuition since that college required an additional forty credits for graduation at a greater cost per credit. In finding that the chancellor did not abuse his discretion in awarding educational expenses to the appellee, the court noted that "[a]ppellee's need for support was temporary consisting of a period of about one year to complete education embarked upon long before the divorce complaint was filed." *McNulty*, 500 A.2d at 881. The court further explained:

Appellant next argues that the support award was an abuse of discretion because it contravened an oral agreement between the parties to the effect that appellant would not be responsible for appellee's educational expenses, and because appellee had a proven earning capacity as a phlebotomist. The assumption underlying appellant's claim is that because his wife had some employable skills and because he has, from the outset, disapproved of her increasing them, his marital obligation is obviated....

As the lower court points out, the "appropriate employment" referred to in [the applicable Pennsylvania statute] does not refer to "any" employment. "It means employment that is suited to the expectancies and abilities of the parties." ... To decide otherwise would, in fact, undermine the intent. of rehabilitative maintenance since nearly all dependant spouses who win such awards could, theoretically, obtain employment in some menial and unskilled capacity. The award is of fixed duration, and its object is to

achieve an approximation of parity, both of which are goals described by our case law. . . . Such an award is intended to have long term effect in that it looks to the spouse's ability, by developing a potential for self-support, to obtain complete autonomy. We agree with the maxim that "rehabilitative alimony is most appropriate where *the dependant spouse is still young, the marriage of relatively short duration, and the dependant spouse has the ability to develop or redevelop qualifications for self-support."* 24 Am.Jur.2d *Divorce and Separation* § 746. Such a factual situation obtains here. [Citations omitted; emphasis supplied.]

*Id.* at 881. The court concluded that "there was no abuse of discretion by the chancellor in finding that the amount of time necessary for appellee to educate herself into appropriate employment as a registered nurse (rather than her eventual goal as an anesthetist) was amply demonstrated in the award fashioned accordingly."

In *DeMasi v. DeMasi,* 366 Pa.Super. 19, 530 A.2d 871 (1987), the Pennsylvania Superior Court again considered an award of alimony *pendente lite,* observing that such an award may be made when the dependent spouse is employed and attempting to complete an education. In *DeMasi,* the husband was a medical doctor who had supported his wife as a full-time homemaker from 1970 to 1982, during which time she raised their children. After the estrangement of the couple on September 10, 1982, the wife filed a support complaint and, on September 28, 1982, the husband filed a complaint for divorce to which the wife responded with answering claims for alimony *pendente lite,* counsel fees, costs, alimony, and equitable distribution. The husband argued, *inter alia,* that the trial court "failed to consider wife's income and earning capacity in establishing support." In deciding that the chancellor had properly determined the wife's earning capacity, the court noted that

she earned a customary salary, and her pursuit of a bachelor's degree indicated a willingness to earn maximum income. She cannot be penalized for having remained in the

**458**

home for twelve years; the nurturing of young children may supersede the economic benefit of full-time employment.... Earning capacity is relevant whether the proceedings concern child support or alimony *pendente lite.*

In a Missouri case cited by appellee, *Henderson v. Henderson,* 822 S.W.2d 474 (Mo.App.1991), the Missouri Court of Appeals for the Eastern District considered an appeal from a *pendente lite* order of court granting maintenance to the wife over her husband's objection that her ability to support herself should operate as a bar to such an award. The court concluded at 822 S.W.2d 477:

> The court heard considerable evidence on the wife's actions to obtain additional education to pursue a career in art for which she had received some earlier education. We find no abuse of the court's discretion in determining that wife needs maintenance pendente lite in order to pursue that education to prepare herself for that field of employment.

In *McNulty* and *Henderson,* the dependent spouse had commenced an educational program prior to the separation of the parties. Moreover, the dependent spouse in each case pursued a course of study that was a continuation of the career track upon which the dependent spouse had already embarked. Furthermore, in none of the cases cited, did the dependent spouse already possess degrees and career training in at least two fields of study and, upon the imminent dissolution of the marriage, decide that he or she would enroll in a completely new and academically questionable [3] course of study that would take six years to complete. Additionally, in each case cited by appellee, the indication was clear that the course of study pursued would result in an increase in the earning capacity of the dependent spouse and would comport with the notion of alimony as a rehabilitative tool. The

---

**3.** Acceptance into the master's degree program at Duquesne University does not guarantee acceptance into the doctoral program. Moreover, at present, the Duquesne doctoral degree proposed to be sought by appellee is recognized for licensure only in the university's home state, Pennsylvania.

chancellor in this case opined that "he [appellee] should be able to increase the likelihood of gainful employment if he is permitted to enhance his credentials...." Such a determination (although not supported by this record) should be made at a hearing to determine permanent alimony.

We therefore hold that the trial court erred in including appellee's educational expenses in making its award for *pendente lite* alimony.

**ORDER VACATED; CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE COUNTY FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.**

**COSTS TO BE DIVIDED EQUALLY BETWEEN APPELLANT AND APPELLEE.**